UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-20626-CR-MIDDLEBROOKS/GARBER

UNITED STATES OF AMERICA

v.

ANDDY CASTILLO,

    Defendant.
_____/

### ORDER ON DNA SWAB APPLICATION (AND OPPOSITION)

Typically, the Undersigned reviews applications for warrants on an *ex parte* basis. The defendant or suspect or target is not aware that an application has been submitted and therefore has no opportunity to weigh in on the issue of whether the United States presented the requisite probable cause to obtain a warrant. Here, however, Defendant Anddy Castillo ("Castillo") was already arrested, in custody and represented by counsel by the time the United States expressed an interest in obtaining his DNA through a warrant-approved buccal swab. Given this background, the United States contacted defense counsel to obtain her position. Defense counsel objected, and the Undersigned directed the United States to provide a copy of the affidavit to the defense and further established a briefing schedule.

The Undersigned has reviewed Castillo's Motion to deny issuance of an oral swab search warrant [ECF No. 13] and the United States' Opposition Response [ECF No. 16]. The Undersigned **grants** the motion. The United States may resubmit the warrant application package to the Undersigned after (and if) it determines that usable DNA was found on the firearm (or other seized items) at issue. Once that occurs, the probable cause the United States discusses in its memorandum will have been generated. Before that occurs, however, probable cause is lacking. Alternatively, it may now resubmit a conditional or anticipatory warrant application, as explained later in this Order.

Castillo has been indicted on charges of being a felon in possession of a firearm and ammunition. Castillo contends that probable cause (to obtain DNA through a buccal swab) is lacking because the United States has not yet confirmed that any DNA has been found on the firearm, ammunition, magazine, or holster. Thus, Castillo argues, the warrant for an oral swab is premature because the United States has not yet received a report from the crime lab confirming that any usable DNA exists. Castillo's theory is straightforward -- without usable DNA to compare with the DNA from Castillo's mouth through two swabs, there is no need to obtain his saliva and any effort to do so is unduly invasive and premature.

According to Castillo, a conditional or anticipatory warrant should be issued instead. Under this approach, the warrant could not executed (by swabbing Castillo's

2

mouth) until the United States obtains information that the sample taken from the firearm contains usable DNA.

The United States objects to this two-step procedure. In its response, the United States concedes that the collection and analysis of saliva is a search within the meaning of the Fourth Amendment and therefore requires probable cause. But it says the probable cause needed relates to whether Castillo omitted the crime charged in the indictment. And, the United States says, the indictment itself provides the requisite probable cause to believe that he did. Finally, it says that a conditional or anticipatory warrant would be inefficient and impractical, causing unnecessary delay and a waste of resources.

There is, however, some authority suggesting "that the return of an indictment in and of itself does not establish the government's entitlement to compel a DNA sample." *United States v. Marshall,* No. 11-CR-00381, 2012 WL 2994020, at *2 (W.D.N.Y. July 20, 2012).

Neither side has cited any controlling legal authority. United States cites *In re Shabazz* and contends: (1) there is no evidence that the saliva swab presents any type of safety or health risks to Castillo; (2) the saliva sample is a minor intrusion into his dignitary interest in personal privacy and bodily integrity; and (3) the means and procedures used to obtain the saliva sample -- "simply swabbing the inside of the mouth" does not involve any "risk of pain or embarrassment" to Castillo -- are reasonable under the Fourth Amendment. 200 F. Supp. 2d 578, 585 (D.S.C. 2002).

But the *Shabazz* Court held that probable cause was not necessary for the saliva swab and that only reasonable individualized suspicion that the target was engaged in criminal wrongdoing was required. Moreover, there was no discussion there about whether an effective DNA comparison could be made. But that discussion *was* provided in *Marshall*.

In *Marshall*, the Magistrate Judge agreed with the Government's position that the indictment's finding that defendants possessed firearms generated grounds to believe that their DNA would be located on those firearms. 2012 WL 2994020, at *2. However, the Court also noted that this did not end the inquiry because there was evidence that the DNA mixture profiles were not of sufficient quality or resolution to be of any significant use. *Id.* Therefore, the Court held, "[w]ithout evidence that the DNA samples recovered from the firearms are of a sufficient quality to be used for comparison purposes with the DNA the government seeks to obtain from the defendants, there is nothing to suggest that compelling defendants' DNA will lead to probative evidence in this case." 2012 WL 2994020, at *3.

The *Marshall* Court held that the questions about the DNA meant that the Government's presentation did not meet the reasonable individualized suspicion standard, which is a *less*-burdensome standard then the probable cause standard the United States uses here. *Id.* The Court denied without prejudice the Government's motion

4

for an order authorizing the taking of DNA samples from all defendants through buccal swabs. *Id.*

Although *Marshall* seems to support Castillo's position, the Undersigned considers it helpful to also review the Supreme Court's latest case involving buccal swabs: *Maryland v. King*, 133 S. Ct. 1958, 1980 (2013), which held that when officers make an arrest for a serious offense supported by probable cause and bring the suspect to the station to be detained, that taking and analyzing a cheek swab of the arrestee's DNA is, like fingerprinting and photographing, a legitimate police booking procedure which is reasonable under the Fourth Amendment. After reaching this conclusion, the Supreme Court reversed the decision of the Court of Appeals of Maryland, which set aside a defendant's rape conviction because it found that the cheek swab taken when he was booked was an unreasonable search. *Id.* The Supreme Court explained that the buccal swab collection procedure is "quick and painless" and involves the swab "touch[ing] inside an arrestee's mouth," requiring no "surgical intrusion beneath the skin." *Id.* at 1967-68. The Supreme Court also described the intrusion of the cheek swab as "a minimal one." *Id.* at 1977.

The *King* Court noted that the "ultimate measure of the constitutionality of a government search is reasonableness." *Id.* at 1969 (internal citation and marks omitted).

The DNA obtained from a buccal swab in *King* was part of a routine booking procedure pursuant to the Maryland DNA Collection Act ("Act"). *Id.* at 1967-70. The Act limits how the information obtained from the swabbing may be used. *Id.* at 1967. No purpose other than identification is permissible. *Id.*

*King* noted that 28 states "and the Federal Government" have adopted laws similar to the Maryland Act authorizing the collection of DNA from some or all arrestees. *Id.* at 1968. But neither party here has addressed this point, and it seems that Castillo's DNA was not obtained upon his recent arrest because, if it had, then the United States would not now be seeking a warrant to compel a DNA sample from a swab.

So, under *King*, the United States could have obtained DNA from Castillo if that procedure was part of a routine booking process. Therefore, the question now is whether the United States can specifically select him for a DNA swab to further its prosecution of Castillo.

*King*, however, does not answer that question, and neither side has even mentioned the case in the submissions. In *King*, the Court noted that the purpose of the routine swabbing is in "knowing for an absolute certainty the identity of the person arrested, in knowing whether he is wanted elsewhere, and in ensuring his identification in the event he flees prosecution." *Id.* at 1977. None of those permissible, legitimate purposes are at issue here.

The grounds relied upon in *King* are all legitimate reasons to justify a "routine, administrative step[] incident to arrest – i.e., … book[ing], photograph[ing] and fingerprint[ing]." *Id.* at 1978 (internal citation and marks excluded). The Court later noted that "DNA identification of arrestees is a reasonable search that can be considered part of a **routine booking procedure**." *Id.* at 1980 (emphasis supplied). But the request for Castillo's DNA is not part of any routine booking procedure. Instead, it is a fact-specific, case-specific application based on the theory that there is probable cause to believe that the DNA obtained from Castillo will yield relevant evidence.

There is surely no doubt that there is probable cause to believe that Castillo unlawfully possessed a firearm as a convicted felon. A federal grand jury has already made that determination when it handed down the indictment. But that is not, in and of itself, sufficient to justify a DNA buccal swab. If the indictment alone were adequate, then the United States could draw Castillo's blood without his consent and require any indicted defendant to have X-rays taken over objection and force them to undergo endoscopies or colonoscopies over their objections.

The purpose of the requested DNA swab from Castillo is to compare it to DNA found on the firearm and related items. But there can be no comparison if there is no usable DNA found on these items. The Undersigned finds *Marshall* persuasive.

Consequently, I view the warrant request as **premature**.

7

From a logistical perspective, the United States now has two alternatives: (1) it can resubmit the affidavit and proposed warrant now by making the warrant *conditional* on first obtaining usable DNA from the items, or (2) it can wait to obtain confirmation that usable DNA exists and *then* resubmit the warrant package.

**DONE and ORDERED,** in Chambers, in Miami, Florida, on October 24, 2016.

_____
Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Donald M. Middlebrooks
The Honorable Barry L. Garber
All counsel of record